IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT L. WINSTON,                )
                                  )
            Plaintiff,            )
                                  )
     v.                           )   No. 10 C 8218
                                  )
OFFICER O'BRIEN, Chicago          )
Police Dept Star #10634,          )
OFFICER YATES, Star #11586        )
                                  )
            Defendants.           )

MEMORANDUM OPINION AND ORDER

On November 27, 2012, after a two-day trial, a jury entered a verdict in favor of plaintiff Robert Winston and against Officer O'Brien, one of two Chicago Police Officers named as defendants in this excessive force action arising under 42 U.S.C. § 1983. The jury awarded plaintiff nominal compensatory damages of one dollar, plus $7,500 in punitive damages. Now before me plaintiff's petition for attorneys' fees, which I grant in part as explained below.

I.

A party who prevails in a § 1983 lawsuit is presumptively entitled to recover reasonable attorney's fees. 42 U.S.C. § 1988. To determine whether, and in what amount, an award of fees is appropriate, I start with the threshold question of whether the fee petitioner has established that he or she is a "prevailing party" under the statute. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Under the Supreme Court's "generous

formulation" of this requirement, a prevailing plaintiff must only have succeeded "on any significant issue in litigation which achieves some of the benefit" sought in the lawsuit. *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (citing *Hensley*, 461 U.S. at 433). If this standard is met, I proceed to a determination of what fees are reasonable. *Hensley*, 461 U.S. at 433.

The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Id.* This is the "lodestar" amount. *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672 (2010) (describing lodestar approach as "the guiding light" of the Court's post-*Hensley* fee-shifting jurisprudence). An attorney's actual billing rate for comparable work is presumed to be a reasonable hourly rate. *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). This presumption reflects a proper emphasis on the "opportunity cost" of lawyers who give up work for clients who would have paid them their standard hourly fees for each of the hours they spent on this case. *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996). An "important qualification" to this principle, however, is that "the reasonable fee is capped at the prevailing market rate *for lawyers engaged in the type of litigation in which the fee is being sought*." *Id.* (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 519 (7th Cir.

1993); *Buffington v. Baltimore County*, 913 F.2d 113, 130 (4th Cir. 1990)) (original emphasis).

In this case, petitioner seeks a total award of $336,918 in attorney's fees. Defendants argue that petitioner is not entitled to any award of fees because his victory at trial was "nominal at best." Alternatively, defendants argue that even assuming an award of fees is appropriate, the hourly rates charged by petitioner's counsel are excessive. Defendants do not object to the number of hours petitioner's counsel spent on the case.

Petitioner was represented by attorneys Alan Salpeter, Ross Neihaus, and Eric Sussman of the law firm Kaye Scholer. Their work on the case was supported by paralegal Kenneth Anderson. Petitioner's requested award is based on hourly rates of $925 for Salpeter, $425 for Neihaus, $715 for Sussman, and $210 for Anderson.

II.

Defendant's first argument--that petitioner not entitled to any fee award because his trial victory was nominal or *de minimis*--is plainly without merit. This is not a case like *Farrar v. Hobby*, in which the plaintiff "asked for a bundle and got a pittance." 506 U.S. at 120 (O'Connor, J., concurring). In *Farrar*, the plaintiff sued six defendants for seventeen million dollars but was awarded only one dollar from one defendant, or

"one seventeen millionth" of what he sought. *Id*. at 121. In this case, despite its conclusion that petitioner had not proven actual damages, the jury nevertheless awarded petitioner sizable punitive damages against Officer O'Brien, whose actions were the primary focus of plaintiff's case. Petitioner's victory was real, not Pyrrhic.

I thus turn to the reasonableness of the hourly rates petitioner asserts. Petitioner submits that Salpeter is a highly accomplished trial attorney who has litigated some of the largest securities fraud cases ever filed, including *Enron* and *WorldCom*, and whose actual billing rate of $925 per hour is commensurate with, or slightly below, that of his peers. Petitioner also points out that in *Johnny's Icehouse, Inc. v. AHAI*, No. 00 C 7363, 2001 WL 893840 (N.D. Ill. Aug. 7, 2001) (Shadur, J.), a Title IX case in which Salpeter represented the plaintiffs successfully on a *pro bono* basis, the court granted the plaintiffs' request for an award based on Salpeter's then-current hourly rate of $495.

With respect to the remaining professionals who billed time on his case, petitioner asserts that Neihaus's hourly rate is reasonable because it is comparable to that of other second year associates at law firms similar to Kaye Scholer, and because Neihaus represented him with the skill and ability of a more experienced attorney. Petitioner argues that Sussman's rate is

reasonable in view of his substantial trial experience, reflected in both his current position as Kaye Scholer's Chicago Co-Chair of the White Collar Litigation and Internal Investigations Practice and his past tenure as Deputy Chief of the Financial Crimes and Special Prosecutions Section of the U.S. Attorney's Office in this district. Finally, petitioner asserts that Anderson is an experienced paralegal with ten years of experience, and that his hourly rate is commensurate with other paralegals at large, national law firms.

Petitioner amply supports his factual assertions with Salpeter's own affidavit; the affidavit of Randall Oppenheimer, a partner at O'Melveny & Myers who is familiar with Salpeter's reputation and work, and familiar with the hourly rates charged by law firms with national litigation practices; and a chart (to which copious supporting documentation is appended) setting forth the hourly rates of comparable professionals at law firms with practices similar to Kaye Scholer's.

Defendants make no meaningful effort to rebut the facts that petitioner offers in support of his petition. Moreover, I agree with petitioner's argument that his case presented many difficulties, and that his counsel's representation overall was superb. Nevertheless, I conclude that the hourly rates he seeks are not reasonable under the governing fee-shifting statute.

What petitioner fails to acknowledge is that the very materials he offers in support of his petition reveal that the "prevailing market rate" for lawyers engaged in civil rights litigation in Chicago is far below the hourly rates his attorneys seek. Petitioner highlights Judge Kennelly's decision in *Jimenez v. City of Chicago*, 09 C 8081 (N.D. Ill. Nov. 14, 2012), to award Jon Loevy ("an outstanding trial lawyer," whose trial skills have been deemed "reminiscent of the trial skills displayed by some of the nationally recognized trial lawyers in this community," *Garcia v. City of Chicago*, No. 2003 WL 22175620, at *2 (N.D. Ill. Sept. 19. 2003) (Holderman, J.)), the full hourly rate the petitioner requested. Conspicuously absent from petitioner's argument, however, is the fact that the *Jimenez* petitioner asserted an hourly rate of $495 for Jon Loevy--who at the time possessed nineteen years of experience--or just over *half* the rate petitioner seeks for Salpeter. Judge Kennelly explained that Loevy's hourly rate was "amply justified by comparison with hourly rates awarded to other plaintiff's civil rights attorneys in Chicago, including rates of $500 to $535 for attorneys who have more years of experience but no greater level of skill or rate of success." Fee Petition, Exh. G at 4 [DN 98-7].[1] Indeed,

---

[1] Petitioner likewise highlights Magistrate Judge Mason's Oct. 12, 2011, Report and Recommendation, which was adopted by the district court in *Foltin v. Ugarte et al.*, 09 C 5237 (Jan. 18, 2012), and which awarded Thomas Morrissey, another experienced, Chicago-area plaintiff's civil rights attorney, an hourly rate of $535 for his

the elephant in the room is that no case in this district (or anywhere else, from all that appears) has ever awarded fees based on an hourly rate even approaching $925 in a § 1983 case.[2]

In fact, the fees requested for Salpeter's work bear a remarkable resemblance to the hypothetical Judge Posner evoked in *Cooper* to illustrate why fees must be "capped" in accordance with the prevailing market rates *for lawyers who engage in civil rights litigation*:

> Suppose the best lawyer in the United States charges $1,000 an hour and is worth every cent of it. Only his practice has nothing to do with civil rights; he is, let us say, an antitrust trial lawyer. He is requested to represent an indigent civil rights plaintiff, and he does so, giving the case his best shot and, despite his inexperience in civil rights litigation, doing a superb job. Would he be entitled to an award of fees at the rate of $1,000 an hour? Not if the judge could have procured competent counsel for the plaintiff at a much

---

work in that case.

[2] In *Johnny's Ice House*, which petitioner cites because the court awarded Salpeter his then-current hourly rate of $495, the court explicitly distinguished the case from litigation pursuant to § 1983, which it considered "a well-marked-out area of law." 2011 WL 893840, at *5. Among the factors that distinguish *Johnny's Ice House* from the present case, and that bear upon the reasonableness of the fees requested, include that: 1) the fees in that case were awarded under Fed. R. Civ. P. 54(d), not under § 1988; that case involved "not only civil rights issues of an unusual nature but also antitrust claims, the retaliation claims at issue, breach of fiduciary duty claims and breach of contract claims-all requiring a far greater overall breadth of skills (and a high quality of litigation skills generally)"; and payment of the fees in *Johnny's Icehouse* was not paid from public coffers, *cf. Perdue*, 130 S.Ct. at 1676-77. *Youakim v. McDonald*, 171 F.R.D. 224 (N.D. Ill. 1997), on which petitioner relies for the proposition that a commercial attorney's standard billing rate is not "per se irrelevant to the reasonable-fee determination," likewise fails to support petitioner's asserted rates.

> lower rate. It is no more reasonable to pay a lawyer $1,000 an hour for services that can be obtained at $200 an hour than it is to pay $1,000 for an automobile hood ornament that you could buy elsewhere for $200. Judges have to be careful when they are spending other people's money.

*Cooper*, 97 F.3d at 920. *See also Perdue*, 130 S.Ct. at 1676-77 ("In many cases, attorney's fees awarded under § 1988 are not paid by the individuals responsible for the constitutional or statutory violations on which the judgment is based. Instead, the fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services.").

Petitioner argues that *Cooper*'s presumptive "cap" should not apply to Salpeter's rate because Salpeter administered the case efficiently, and because his skills as a commercial litigator are "perfectly transferable" to civil rights litigation. *See Cooper*, 97 F.3d at 920-21. Petitioner insists that Salpeter's experience enabled him, for example, to simplify the case down to its essential points; to organize and present his arguments clearly; and to examine witnesses effectively. Petitioner also notes that Salpeter was able, based on his pre-existing relationships, to consult, at no cost, with experts and advisors whose insights and advice strengthened counsel's presentation of petitioner's case at trial. I agree that these factors likely contributed to

petitioner's overall success; but I am not persuaded by petitioner's conclusory suggestion that even the most accomplished civil rights attorneys in Chicago could not match Salpeter's resources and wherewithal.

In view of the foregoing, I conclude that an hourly rate of $535 is reasonable for Salpeter's work on petitioner's case. This rate--which petitioner's own submissions place at the very highest end of the "prevailing market rate" for this type of litigation--recognizes Salpeter's vast trial experience as well as his admirable work on this case, and is consistent with rates charged by accomplished, Chicago-area civil rights attorneys. For similar reasons, I conclude that a reasonable hourly rate for Neihaus's work is $225 (*see* Fee Pet., Exh. G at 8) (highlighting rate awarded to Loevy & Loevy attorney Rachel Steinbeck). As for Sussman, petitioner emphasizes his impressive credentials and experience in the areas of white collar litigation, financial crimes, securities fraud, and other areas (not including civil rights) but fails to persuade me that the value of Sussman's work on this case exceeds the "prevailing market rate" of similarly experienced civil rights attorneys. Accordingly, I conclude that a reasonable hourly rate for Sussman's contribution to the case is $450, commensurate with the rate Judge Kennelly found to be reasonable for civil rights attorney Michael Kanovitz in *Jimenez*. *Id*. at 5. Finally, petitioner has offered no evidence that his

request for $210 per hour for the work of paralegal Kenneth Anderson is in line with prevailing market rates in this district for similar services. In view of Anderson's considerable experience, I conclude that an hourly rate of $125 is reasonable. *See id*. at 10.

### III.

For the foregoing reasons, petitioner's petition for fees is granted in part. Petitioner is entitled to a total award of $187,467.

**ENTER ORDER:**

                                                           Elaine E. Bucklo
                                      United States District Judge

Dated: June 13, 2013