```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION


ROBERT L. WINSTON,             )
                               )
          Plaintiff,           )
                               )
     v.                        )   No. 10 C 8218
                               )
OFFICER O'BRIEN, Chicago       )
Police Dept Star #10634,       )
OFFICER YATES, Star #11586     )
                               )
          Defendants.          )
```

MEMORANDUM OPINION AND ORDER

Despite the Supreme Court's decades old admonishment that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Ecker*, 461 U.S. 424, 437 (1983), the attorneys in this straightforward excessive force case are before me again for another chapter in their seemingly endless post-judgment fees dispute, the value of which has long since dwarfed the jury's $7,501 damages award. A synopsis of the proceedings follows.

In April of 2012, I appointed trial counsel for plaintiff, who had until then represented himself in this matter. Counsel first appeared in June of 2012, and, after conducting limited additional discovery, tried the case to a jury over two days in November of 2012. The jury found in favor of plaintiff and against defendant O'Brien and awarded compensatory damages in

the amount of $1.00 and punitive damages in the amount of $7,500.[1] Petitioner then sought attorneys' fees pursuant to 42 U.S.C. § 1988. I granted the fees petition in part. *See* June 13, 2013, Mem. Op. and Order (DN 117). I concluded that plaintiff was indeed the prevailing party and explicitly rejected O'Brien's argument that the jury's relatively modest award did not bring plaintiff's victory within the scope of § 1988. *Id*. at 3. I also found that that the amount of time plaintiff's attorneys had spent representing him in the six months leading up to his trial was appropriate (indeed, that issue was not disputed), but I slashed his fee request by about forty-five percent (from $336,918 to $187,467) because I concluded that the hourly rates plaintiff proposed for the three attorneys and one paralegal involved in his case were out of line with prevailing market rates for similar services in this district. *Id*. at 6-10.

O'Brien did not appeal that decision, nor did he pay (or make any overtures suggesting he intended to pay) either the attorneys' fees or the underlying damages. Seeking to enforce both awards, plaintiff moved to compel O'Brien to provide testimony and documents pursuant to a citation to discovery assets. Plaintiff also moved for an order requiring the City of

---

[1] The jury further found against plaintiff and for defendant Yates.

Chicago to indemnify O'Brien for the attorneys' fees. I granted both motions, holding, with respect to the latter, that because the City was "at the helm" of O'Brien's defense, and because its defense strategy was largely responsible for driving up plaintiff's legal fees, 745 ILCS 10/9-102 supported holding the City liable for plaintiffs' attorneys' fees. The City appealed that decision.

While the appeal was pending, petitioner requested an additional $90,777 in attorneys' fees to compensate them for the efforts they expended in seeking to enforce my previous award. I granted this petition, too, on January 29, 2014, noting that O'Brien's aggressive post-trial strategy and ongoing failure to pay either the damage award or the attorneys' fees I awarded on June 13, 2013, had necessitated "significant additional work" by petitioner's counsel, incurring fees that I found to be adequately justified and explained in counsel's billing records and affidavit.[2]  1/29/2014 Order (DN 150). After three months passed with no indication that payment of either the attorneys' fees or the underlying damages was forthcoming, I entered an order granting plaintiff's motion to garnish Officer O'Brien's wages. 4/3/2014 Order (DN 165).

---

[2] In each petition subsequent to its first, plaintiff's counsel has calculated its fees using the hourly rates I held were appropriate in my June 13, 2013 Order.

3

In a decision issued on November 14, 2014, the Seventh Circuit disagreed with my conclusion that the City was liable for indemnification of plaintiff's attorneys' fees, but it did not disturb the amounts I had awarded, leaving O'Brien solely responsible for attorneys' fees that by then totaled $278,244. Meanwhile, the Fraternal Order of Police (O'Brien's union, the "FOP") moved to intervene in this action and to stay the garnishment of O'Brien's wages once the punitive damages award to plaintiff has been satisfied (i.e., before paying off any portion of the attorneys' fees awarded). Plaintiff opposed this motion, which I agreed had no merit, noting, "[t]here is no conceivable reason why counsel's attempt to collect the fee awarded should be delayed further." DN 177. That was in June of this year. In July—with the attorneys' fees still unpaid, but the damages award nearly satisfied with O'Brien's garnished wages—plaintiff filed his now pending second supplemental petition for attorneys' fees.

In his most recent petition, plaintiff seeks fees incurred in connection with: 1) collection efforts against O'Brien, including taking his deposition in conjunction with a citation to discover asserts, and ultimately obtaining and effectuating a wage deduction order; 2) negotiations with the FOP and the City in ultimately unfruitful efforts to resolve the fees dispute; and 3) motion practice relating to attorneys' fees, wage

4

garnishment, and the FOP's motion to intervene. Defendant argues that plaintiff is not entitled to any of these fees because his attorneys have already been compensated for their work through trial; because their hourly rates are unwarranted in view of the type of work they performed; and because their bills were too vague and reflect items not appropriate for fee-shifting.

On the whole, plaintiff has the better of these arguments. For one, attorneys' fees for time spent in recovering fees, such as in plaintiff's collection proceedings against O'Brien, are eligible for recovery under fee shifting statutes such as § 1988. *See Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 162 ("denying attorneys' fees for time spent in obtaining them would dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees") (quoting *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979)) (alterations and internal quotation marks omitted)). The only case defendant cites for his suggestion that post-verdict legal services are not recoverable under § 1988, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), is not to the contrary. The issue in *Perdue* was whether "the quality of an attorney's performance or the results obtained are factors that may properly provide a basis for an enhancement" to the lodestar calculation. 559 U.S. at 554. Nothing in *Perdue* undermines the Court's observation in

*Jean* that fees incurred in litigating fees are recoverable under fee-shifting statutes such as § 1988.

Defendant cites no authority at all for the argument that attorneys' fees for post-judgment proceedings should be based on a lower hourly rate than fees incurred during the pre-trial phase of litigation. The cases he points to—*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011), *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999), and *Buffington v. Baltimore Cnty.*, 913 F.2d 113, 130 (4th Cir. 1990), plainly hold nothing of the sort, as they merely reaffirm that a "reasonable rate" is derived from the market rate for similar litigation. Nothing in these cases remotely suggests that litigation should be parsed into various phases for the purpose of determining reasonable hourly rates based on the type of legal work performed in each. Indeed, the Court's observation in *Jean* that fee-shifting statutes like § 1988 "favor[] treating a case as an inclusive whole, rather than as atomized line-items" counsels against such a methodology. 496 U.S. at 161-62.

Finally, I have reviewed the billing records plaintiff's counsel have submitted in conjunction with their fee request, and I find that they are, on the whole, amply detailed and describe legal work that is appropriate for recovery.

All of this suggests that plaintiff's latest request for attorneys' fees is on solid legal ground. What the foregoing analysis fails to capture, however, is the real-world effect of successive fee awards on the only party currently responsible for paying them: Officer O'Brien.[3] Plaintiff acknowledges that O'Brien's wages are currently being garnished by $522.60 each bi-monthly pay period, and that all compensatory and punitive damages assessed against him were paid off as of July of this year, that is, after roughly fifteen months of wage garnishment. *See* DN 176 at 3. At the current rate, even if no additional fees are awarded, it will take Officer O'Brien more than another *twenty years* to pay off the attorneys' fees already awarded in this case.

While § 1988 undoubtedly serves the important purpose of ensuring that civil rights plaintiffs with bona fide claims can find lawyers to represent them, see *Hensley*, 461 U.S. at 444 (Brennan, J., *dissenting*), its "essential goal...is to do rough justice," and "trial courts may take into account their overall sense of a suit." *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 2216 (2011). My overall sense of this suit is that while the attorneys' fees I have already awarded—which appear finally to

---

[3] I understand from various pleadings in this case that the FOP has grieved the City's refusal to indemnify O'Brien for these fees pursuant to those parties' collective bargaining agreement. For the moment, however,

be on the road to satisfaction—do not fully compensate plaintiff's counsel for the "opportunity cost" of taking on plaintiff's representation, they are nevertheless adequate to fulfill § 1988's purpose of ensuring that civil rights violations do not go unredressed because their victims cannot find competent counsel.

It bears recalling, in this connection, that irrespective of the availability of attorneys' fees under § 1988, attorneys in this district have an "ethical obligation to volunteer their time and skills *pro bono publico*," *Mallard v. U.S. Dist. Court for Southern Dist. of Iowa,* 490 U.S. 296, 310 (1989), and indeed, plaintiff's counsel undertook his representation in the discharge of that obligation. It also bears recalling that the verdict in this case reflects the jury's assessment that $7,500 in punitive damages was adequate to punish Officer O'Brien for his conduct. I am skeptical that the jury considered that the law would tack on an additional $270,000 and then some to his bill. Moreover, there has never been any dispute that although it is Officer O'Brien's paycheck on the line, it is the City that has driven the defense of this case, up to and including the response to plaintiff's most recent fees petition.[4] While I agree with plaintiff that defense counsel's approach to these

---

[4] Indeed, the City's Corporation Counsel is named as O'Brien's attorney in the opening paragraph of his response, which is signed by the City's outside counsel.

proceedings has driven up his litigation costs, O'Brien himself seems to have had little say in the matter.[5]

In short, while the law may well support plaintiff's entitlement to the fees requested in his second supplemental petition, I conclude that neither the policy underlying § 1988 nor the equities of the case support visiting additional financial hardship on Officer O'Brien, who already faces more than two decades of wage garnishment to satisfy prior awards of attorneys' fees that far outsize the punitive judgment against him. Accordingly, I deny plaintiff's second supplemental request for attorneys' fees.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: October 7, 2015

---

[5] While O'Brien and the City plainly share an interest in defeating plaintiff's claims for attorneys' fees, only O'Brien is exposed to the negative consequences of the City's costly defense strategy, as the City has refused to indemnify O'Brien for attorneys' fees. And while attorneys whose vexatious conduct unnecessarily prolongs the litigation may be subject to Rule 11 sanctions, see Morjal v. City of Chicago, 774 F.3d 419, 422 (7th Cir. 2014), plaintiff has not invoked Rule 11 to recover his attorneys' fees, nor could I order such a sanction without affording prior notice and an opportunity to be heard. Id.

9